are going to be submitted on the brief, so we'll hear argument on four, and we may or may not take a break. We'll keep you in suspense on that. First case we're going to hear is Heron v. Nationstar Mortgage. This is 21-1362, and we'll hear from Mr. Mitchell. Thank you, Your Honors. May it please the Court. Jonathan Mitchell on behalf of Appellant James Heron. The District Court held and dismissed Mr. Heron's Keatham lawsuit under Rule 12b-6 because it held that Mr. Heron's complaint falls within any of the three statutory categories listed in Section 3730E4A. It is not enough for Nationstar to point to a previous public disclosure. It must be a public disclosure of the type described in the statute in Section 3730E4A, Romanets 1-3. Why isn't that argument waived? It's not waived, Your Honor, for several reasons. First, this goes to the construction of a Federal statute, and this Court is obligated to interpret a Federal statute as written, regardless of whether the parties make the Is that so even though the District Court in this case recited its understanding of your argument as not disputing that the public disclosures came from a source listed? I mean, it acknowledged that in its order, and you didn't move to reconsider that ruling or? Well, we certainly didn't concede that point ever anywhere in our District Court briefing. So that's not the – I mean, I don't interpret in any way the District Court opinion to say that we conceded this point. What we emphasized in the District Court was that the public disclosures are substantially similar to Mr. Heron's allegations. We still preserve the claim that the public disclosure bar is inapplicable, and we are allowed to add new arguments on appeal to a fully preserved claim. The claim is that the public disclosure bar does not apply. There are additional arguments in addition to those we made to the District Court that we are now presenting to this Court for the first time on appeal. But Nationstar is in no way prejudiced by this. They have had a full opportunity to respond to our arguments in their But the statute still says what it says. It does. But can I just follow up on Judge Rossman's question? Because I appreciate your argument. It's our obligation to interpret the statute correctly, irrespective of what the parties argue. But if this argument about these particular facts fitting in within the square pegs of the The District Court never had an obligation, never had a reason to sua sponte apply these facts to the statute. Your Honor, I respectfully disagree. I think the District Court did have an opportunity to read the statute and apply it as written. And judges always have that obligation, regardless of what the parties say. We're talking about an act of Congress. This is a federal statute. It is the supreme law of the land under Article VI of the Constitution, and it must be applied and enforced. A federal judge can never ignore the a litigant has not made the right argument or brought the actual text to the court's attention. That's an obligation every judge has, whether the parties raise it or not. That seems to read waiver doctrine just outside of law. I mean, I don't understand how that — is that just specific to your statutory interpretation argument? It's specific to the interpretation of a federal statute, which under Article VI is the supreme law of the land, and federal judges have an obligation to do that. It doesn't exist in many other contexts outside issues surrounding the interpretation of a federal statute. But we cited the authorities on pages 2 and 3 of our reply brief that support this very point. When you're talking about the interpretation of an act of Congress, a congressional enactment, a federal statute, the supreme law of the land, it must be honored and obeyed by federal judges, even if a party failed to preserve the precise arguments below. And even here, we are presenting the arguments to this Court. NationStar has had an opportunity to respond. There's no possible claim of failure. And so all of these underlying the waiver doctrine, concerns about opportunistic behavior or unfair prejudice to other litigants, would apply here and suggest that waiver should be enforced. And then finally, Judge Rossman, the Supreme Court's decision in Yee v. Escodito, which we cite in our reply brief, makes clear that it is acceptable for litigants on appeal to raise new arguments for the first time as long as the underlying claim has been preserved. Do you think that Yee is consistent with our Court's jurisprudence on waiver? I don't know whether it is, Your Honor. But if there is any inconsistency, this Court should follow the Supreme Court rather than previous decisions of this Court. I understand there is the rule of orderliness, and panels shouldn't overrule previous panels of this Court. But anything coming from the Supreme Court would have to trump, in our view. And we believe this argument is fully preserved. But even if not, even if this Court were to think that this is waived, there are other bases on which Mr. Heron can win on appeal. And if I could, with the Court's permission, I'd like to get into those as well. There is a second fatal and insurmountable obstacle to Nation Star's position on appeal. And that is that even if these alleged public disclosures could somehow find a way to fit within one of these categories listed in Romanets 1 through 3 of Section 3730e-4a, none of them involve, quote, substantially the same allegations or transactions, end quote, as those alleged in Mr. Heron's complaint, because none of them involve fraud committed by Nation Star. That's the most serious problem here with Nation Star's position, because these public disclosures, to the extent they are relevant, concern fraud or bad behavior generally in the mortgage industry. But nothing specific to Nation Star, and certainly nothing that would set the government on the trail of Nation Star's alleged fraud, as described in Mr. Heron's complaint. For the consent decree for the Massachusetts Division of Banks, did you make this argument in your opening brief? I know you did in your reply brief. I believe we did, Your Honor. I didn't see it. We may have said, you know, it's possible we just said Massachusetts is just not a State. We said it was a State proceeding, not a Federal proceeding. You certainly made the argument that you spent the first five minutes on, that it didn't fit within the statute. On the substantial similarity, that's what I'm asking about. Yeah. You know, I would have to go back and look, Your Honor, and I don't remember whether we specifically made that point. I know we said on the Massachusetts consent decree that it shouldn't even get the first base because it's not, it wasn't a Federal proceeding. I agree with you. Not a State proceeding. I agree with you. So it's possible we thought in the opening brief that that was enough, and we didn't go into that alternative reason until our reply. But I don't think that's a waiver. A reply brief is allowed to respond to any argument made by the appellee. Well, I sure don't know about that. You certainly can respond in a reply brief to an argument that the appellee makes. Yes. But typically, if a district court relies on a legal point to make the decision, typically it's the obligation under Rule 28 to make that challenge in your opening brief, rather than to wait until your reply brief when the appellee has no opportunity to defend the district court's rationale through a sort of reply. Well, the appellee always has the opportunity to defend the district court's rationale in their appellee's brief. Even if we don't confront it head-on. Well, if we have challenged the district court's holding on a certain ground, the appellee can defend the district court's ruling on a different ground, even if we don't mention that in our opening brief, because they have to find some ground on which to defend the district court's decision, and they did defend the district court's decision on the rationale that it made. So I don't see how there's any prejudice to NationStar if the first time you mentioned this point was in our reply brief, because in the opening brief, we thought perfectly reasonably that the fact that this was not a Federal proceeding was enough to render the public disclosure bar inapplicable with respect to this Massachusetts Division of Bank's consent to it. I don't mean to beat a dead horse or monopolize your time, but prejudice aside, I wonder if, you know, we do have lots and lots of cases saying that if an appellant waits to challenge a district court's rationale in the reply brief for the first time, that is waived. Well, we did challenge the district court's rationale on a different ground. I understand, but we did say the district court was wrong to rely on this Massachusetts Division of Bank's consent order. Okay. Because it was not Federal. Right. Now, they come back at us and say, look, it was substantially similar, and then we responded to that in our reply brief. Absolutely. But it's enough to preserve the claim, Your Honor. I think the difference here is have we preserved the claim versus specific arguments made on behalf of a claim? And it's totally normal in a reply brief for new arguments to come out in support of a previously preserved claim based on what the appellee has said. And we can't read the appellee's mind before we file and know how they're going to try to defend the district court. So it's totally normal, I think, in a reply brief for that to occur. But there's also a third problem, I think, for NationStar. And again, this is a separate independent obstacle. Even if this Court thinks we're wrong with respect to the public disclosure bar, Mr. Heron specifically alleged in his complaint that he was an original source. And that's an exception to the public disclosure bar. It's alleged in his complaint. And this is before the Court on Rule 12b-6. So all allegations of the complaint have to be accepted as true. There's no proof required. The district court cannot disbelieve or doubt the veracity or truth of the allegations. It's possible Mr. Heron may not be able to prove this ultimately, but that's a question to be resolved in summary judgment, not on Rule 12b-6. And the district court, in rejecting Mr. Heron's original source argument, denied the truth of his allegations. And that, again, at summary judgment, that can be done. We have to do more than merely allege a fact at the summary judgment stage. We're not at summary judgment yet. This is on Rule 12b-6. And because of that, all Mr. Heron has to do is allege that he's an original source. The allegations were indisputably made. They're in paragraphs 22 and 23 of our complaint on page 30 of our volume 1 appendix. And that alone is enough to warrant reversal in the district court, even if the Court disagrees with everything else we're saying about the public disclosure bar. I see I'm into my rebuttal time. May I reserve my remaining four minutes? Roberts. Sure. Thank you. Yeah, well, Amy, stop the clock. Veronica, do you have any questions? Okay, great. Thank you, Your Honors. May it please the Court. My name is Erin Edwards, and I represent the Appellee Nation Star Mortgage LLC. Your Honors, the district court got it right. This is not an appropriate False Claims Act cause of action. Mr. Heron's Second Amendment complaint was simply a misguided attempt to seek revenge after a lawful foreclosure. It's the exact type of case that the public disclosure bar to the False Claims Act was designed to prevent. This Court should affirm dismissal for two reasons. First, the face of Mr. Heron's complaint shows that appropriate public sources disclose substantially the same conduct that Mr. Heron alleges Nation Star engaged in. The government would need no help uncovering Nation Star's fraud if it truly existed. The public disclosure bar does apply. And second, even if Mr. Heron could get around the public disclosure bar, he simply assumes that Nation Star submitted false claims to the government in exchange for HAMP and TARP benefits. That's because he doesn't have any facts to show that Nation Star actually submitted a false payment claim, and he can't meet Rule 9b's heightened pleading standard. Can I just stop you there, Counsel? So which of those two questions should we answer first in your view? Should we look at Rule 9 first? Or I'm just trying to understand how you see the order of the case. I see the order of the case as ruling on the public disclosure bar issue first, because that is the issue that was addressed by the district court. Wouldn't you ordinarily, though, look to Rule 9 first? Yes, that is true. That is the pleading standard that Mr. Heron did not meet. I do agree with that, but I believe the court could affirm the dismissal on either issue, on either grounds. Okay, but you would prefer us to do it on the public, look at public disclosure first? I guess I'm trying to get you to take a position. Sure. I think that actually Rule 9b could even be easier than the public disclosure bar. Under Rule 9, Mr. Heron is required to state his False Claims Act cause of action with particularity. In the False Claims Act context, that means supporting an allegation that a false claim has been submitted to the government with actual facts, and that is not what occurred here. So I do agree that Rule 9 probably would be the easier issue to tackle first. Is there anything that says we have to, we're obligated to do Rule 9 first, or you're just saying it would be an easier resolution, I guess? Yes, I'm not aware of anything that says that Rule 9 has to be analyzed first. I believe in the case law that I've reviewed, the order usually seems to go that the public disclosure issues analyzed first, and then— I'm sorry, please complete your answer. And then the Rule 9 pleading standard, I believe, is typically looked at second. My question is if you think the public disclosure bar is an affirmative defense, and if so, how that impacts our analysis. Yes, the public disclosure bar is an affirmative defense under the amendments, but the face of Mr. Heron's complaint shows that he pled the necessary elements to meet the public disclosure bar. He says exactly in the face of the complaint what is needed to meet that public disclosure bar. That includes that the sources fall within the public source channels under the public disclosure bar. They all come from sources that are within the source categories, and he also shows substantial similarity based on his allegations in the complaint. He also pleads that he is affirmatively not an original source, so we can't get around the public disclosure bar by just simply saying that he has the requisite knowledge to be an original source. His allegations affirmatively show that he is not. He says that he suspected that NationStar was engaging in this fraud scheme. That's why he had to launch his investigation into other cases. He says that he launched his crusade because he wanted to get to the bottom of suspicious activities, so he didn't have this direct knowledge as he admits in his complaint. So, yes, the public disclosure bar is an affirmative defense, but the court doesn't need to look any further than Mr. Heron's allegations to confirm that it does apply. Going back to the public sources that were listed in Mr. Heron's complaint that showed that the public disclosure bar was triggered, Mr. Heron says that it doesn't matter that he never argued before the district court that those sources fall within the public disclosure source channels, but that truly can't be the case. An issue not passed upon by the district court is not appropriate for consideration on appeal. That's regardless of whether it's an entirely new issue or just a new legal theory falling under the same general category. Well, it is discretionary. I mean, forfeiture is discretionary. And let me press you a little bit on that. With regard to the Massachusetts Division of Banks, it is obviously not a federal entity. I mean, we all know that. And that seems to be clearly outside of the statutory ambit. And even if it were forfeited, why shouldn't we exercise our discretion to consider it? Yes, I do agree that it is discretionary to consider it, but this court has held that it's only in extraordinary circumstances that it will consider issues that were not raised below. And Mr. Heron hasn't provided one reason, let alone an extraordinary reason, why he didn't raise it below. And it's usually to affirm, isn't it, not to reverse? Exactly. The cases that Mr. Heron cites are actually not on point at all. The issues where the court has looked at alternative arguments is for affirmance, not for reversal. The rule is that you can't lose on one theory below and then win on appeal based on an entirely new legal issue. But even if Mr. Heron did not waive the source channel arguments, the sources do fall within those categories, including the Massachusetts Division of Banks' consent order, because Mr. Heron admits that NationSAR's conduct occurred prior to statute amendment. Starting in 2009, but he's not complaining about that conduct in 2009. He's complaining about conduct post-2010 after the statute had been amended. I believe the allegations in this complaint say that NationSAR entered into the HAMP program and signed the contract with Fannie Mae and even submitted certifications with Fannie Mae in 2009 to certify its entitlement to be in this program. And he's claiming that those certifications were false. So he is saying that that conduct did occur prior to statute amendment. And because the statute is not, or the amendments are not retroactive, the court looks to the offending conduct to determine which statute version applies at the time of the offending conduct. So is the part of the conduct post-2010 outside the statute and the conduct from 2009 to passage of the statute of the amendment in 2010, is that, that's not fair game, but the post-2008 conduct would fall within the public, would not fall within the public disclosure requirement? Well, I believe, so since the, some of the offending conduct occurred in 2009 in the Massachusetts Division of Bank's consent order would be able to be considered under the prior version for that 2009 conduct. And then you look at whether or not that conduct was substantially the same as what Mr. Heron is alleging NationStar engaged in in this case. And did it set the government on the trail of the alleged fraud? Yes, it did. That offending conduct is exactly, from 2009, it's exactly what Mr. Heron is saying NationStar did to trigger his False Claims Act cause of action in this case. So, yes, I do believe that it would still apply. And then once the court looks at the substantially the same test, it can see that the prior disclosures disclose substantially the same conduct. Mr. Heron wants the court to do a hyper-specific reading of the complaint to see if it disclosed exactly the same conduct by exactly the same parties, but that's not what's required under the test. The prior disclosures only need to disclose the essence of the fraud allegations and set the government on the trail of the alleged fraud or the alleged misconduct. They don't need to name NationStar specifically, even though one does the Massachusetts Division of Bank's consent order, and they don't actually have to say the prior conduct was wrong or fraudulent. They only need to identify a problem and allow the government to trace that problem back to a group of possible offenders. And here those disclosures do more than that. They show that the government was already aware of and investigating and prosecuting this TARP fraud. That's the Farkas prosecution. That means that the government was already aware that the use of fake notes to obtain TARP benefits was already a potential problem in this industry. And Mr. Heron says that NationStar and Aurora were two of the largest loan servicers in America. He even admits that NationStar took over $67 billion of Aurora's servicing rates. So therefore, it would already be on the government's radar in this highly regulated industry. And Mr. Heron shows that Aurora was already on the government's radar because of the Office of Thrift Supervision consent order. That is a federal order with a federal agency that Mr. Heron says shows that Aurora was using improperly endorsed notes to complete foreclosures. That's the exact conduct that Mr. Heron says NationStar was engaging in here. And the trail from Aurora to NationStar isn't far. If NationStar was stepping into Aurora's shoes in foreclosures across the country and took over $67 billion of its servicing rates, the government would certainly know to look to NationStar to make sure that it was not also using these allegedly forged notes to complete its foreclosures as well. I hate to take up more of your time, but the OTS consent order, I didn't see the word forged or fraudulent anywhere in the document. I mean, it talked about unsafe and unsound practices that didn't ensure proper endorsements. I didn't see anything that would have caused me, as an investigator, I've never been an investigator, to say, you know, maybe they were committing fraud. It seems quite a stretch on the OTS consent order. Well, the OTS consent, or at least the part that Mr. Heron quotes, says that Aurora was not ensuring that notes were properly endorsed for proceeding with foreclosure. And again, for substantially the same test, the prior disclosed conduct doesn't have to say that it was fraudulent or even wrong. It just needs to give rise to the essence of these fraud allegations. And Mr. Heron says that proceeding with a foreclosure without having a properly endorsed note, he says that that's what's fraudulent. He says that that is a fraudulent activity. So the consent order does disclose exactly what he is saying that NationStar engaged in. And again, the trail from NationStar to Aurora isn't long. And this court, in the natural gas royalties case, says that this really is enough that the government had the information within its own records to be able to make the connection between prior fraudulent conduct, even if it didn't name the actor specifically, because it had contracts with the individuals that were obtaining the government benefits. That's the case here. Mr. Heron alleges and attaches the contract between NationStar and Fannie Mae. And he says it was under that contract that NationStar was asking for the TARP and HAMP funds. So Fannie Mae, like the government in the natural gas royalties case, could look to its contractual relationships with a relatively small pool of actors and see if they were also engaging in this alleged TARP fraud, like the Farkas prosecution. And again, even if Mr. Heron is able to get around the public disclosure bar, Rule 9b still would bar this cause of action. Mr. Heron does not provide any real information about NationStar submitting a false payment claim. He points to his 45 pages of allegedly fraudulent promissory notes to say that he provided enough information. But that's not the issue in this case. The issue isn't whether NationStar allegedly forged notes or completed fraudulent foreclosures. The issue is whether NationStar submitted a false claim for payment to the government. It's the claim for payment and the payment that flows from it that triggers the disclosure bar, or I'm sorry, the False Claims Act. Thank you. Your Honor, if I may begin by answering Judge Ide's question to Ms. Edwards about the order of operations and which issues should be resolved. First, the district court did not rule on the Rule 9b question about whether the allegations of fraud had been sufficiently pleaded with particularity. And we did not brief that issue at all in our opening brief because the district court did not rule on it.  We believe the proper order for this court would be to rule on the issues that the district court actually addressed regarding the public disclosure bar. And if there is a remand to the district court, instruct the district court on remand to consider the Rule 9b question. It was thinly briefed in this court. We did point to the very large, detailed allegations we had throughout 45 pages of our complaint. But if the court were to reach the issue of Rule 9b, we have certainly pleaded fraud with particularity. We don't have to prove our case at the motion-to-dismiss stage. We don't have to demonstrate that the allegations are actually true. But we have alleged that Nation Star is in forgery and fraud. That allegation must be accepted as true. And Rule 9b just requires us to plead with sufficient particularity so that the defendants are on notice about what we're talking about. We have certainly done that, even though, at the end of the day, Mr. Harron will need to do much more to survive a motion for summary judgment or to actually win his case at trial. I'd like to return to where I began. There are three separate and independent reasons why the district court should be reversed. And Nation Star has to refute all three arguments if it's to prevail on this appeal. There's been a lot of discussion about waiver. Why? Why did they have to overcome all three? For example, with the Massachusetts Division of Banks' consent decree, if you had forfeited that argument on substantial similarity, and if you did waive the argument, or fitting within the statute, if you waived that argument, and then if you waived the argument on substantial similarity by waiting until your reply brief, then all of the conduct would be within the public disclosure bar because of the Massachusetts decree. But we still have the original source, which is an exception to public disclosure. So we still have to overcome that. So, Your Honor, I agree with you. But we wouldn't have to decide the OTS decree. That is correct. And I'm sorry. When I said three separate and independent reasons, I'm not talking about the separate pieces of evidence. Sorry. No, I'm sorry. And I should be more clear, Your Honor. The three separate points, the three obstacles to affirmance are, first, the fact that none of these alleged public disclosures fall within those statutory categories in Romanets I through III. We've discussed that extensively. There are issues of waiver potentially lurking in the background. The second is the substantial similarity issue, right, with respect to all four disclosures. The third is the original source. So even if public disclosure bar is implicated, all Mr. Herron needs to do at this stage of the litigation is to allege that he is an original source, and that's enough on Rule 12b-6 to get around the public disclosure bar. Again, more will be required later from Mr. Herron at the summary judgment stage. We're not trying to say that's all he needs to do to win the case. But we're, before this court right now, at the Rule 12b-6 stage of litigation, and mere allegations are all that we need, and we have done that on the original source. Ms. Everson not discussed this issue at all in her presentation, but the point I want to drive home is that even if this court disagrees with everything we've had to say about waiver, we still have the original source, and NationStar needs to knock down that argument if it wants the district court's judgment affirmed. I'm happy to answer any other questions the court may have. What about these 45 pages that are accumulated from other publicly filed cases? Why aren't those publicly accessible? Well, we haven't said in our complaint that they are publicly accessible. And again, Your Honor, this is an affirmative defense that's being raised on a motion to dismiss. The only way we can lose is if we have pleaded ourselves out of court by affirmatively alleging in our complaint the elements of an affirmative defense that makes it impossible for us to win consistent with our allegations, and we have not in any way conceded anywhere in our complaint that these previously disclosed or allegedly previously disclosed issues fall within the statutory categories of the 3730E4A, nor have we alleged that they are substantially similar or that they would set the government on the trail of NationStar's alleged fraud. All the court has to go on right now are the allegations of our complaint, and we have not pleaded ourselves out of court. All right. Thank you. Thank you, Your Honors. Very well presented by both sides. This matter will be submitted. And we'll hear the case of Hansen v. Daley, 21-3235. Thank you.